IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VAN PATTERSON, SR., | ) | Case No.  1:18cv1073 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| KIMBERLY CLIPPER, Warden, | ) | THOMAS M. PARKER |
| | ) | |
| Respondent. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |

## I.  Introduction

Petitioner Van Patterson, Sr., filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his convictions and sentences in *State v. Patterson*, Case No. CR 2014 04 1179. [1]  ECF Doc. 1.  Respondent Warden, Kimberly Clipper, filed an answer/return of writ.  ECF Doc. 7.  Patterson filed a traverse.  ECF Doc. 8.

On January 26, 2016, a jury found Patterson guilty of one count of kidnapping and three counts of rape.  ECF Doc. 7-1 at 144.  The trial court found Patterson guilty of sexually violent predator specifications and sentenced Patterson to serve a prison term of 10 years each for the kidnapping and rape offenses against one victim, to be served consecutively, and indefinite prison terms of 15 years to life for each count of rape against another victim.  Patterson's

---

[1]  The matter is before the undersigned by an automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation on Patterson's petition or other case-dispositive motions.

aggregate sentence was 35 years to life in prison.  ECF Doc. 7-1 at 103.  Patterson is currently incarcerated at Lorain Correctional Institution.[2]

Because Patterson's claims are all procedurally defaulted, noncognizable and/or lacking in merit, I recommend that his claims be DISMISSED and his petition for writ of habeas corpus be DENIED.

## II.  Procedural History

### A.  State Conviction

On April 22, 2015, a Cuyahoga County Grand Jury indicted Patterson, charging him with one count of rape, one count of felonious sexual penetration, and one count of kidnapping against Jane Doe I ("T.T.") in 1995, (Counts One through Three); three counts of rape, one count of gross sexual imposition and one count of kidnapping against Jane Doe II ("A.G.") in 1997, (Counts Four through Eight).  Counts Four through Eight each had a sexually violent predator specification, and Count Eight also had a sexual motivation specification. The indictment also charged Patterson with four counts of rape and one count of kidnapping against Jane Doe III ("M.J.") in 2009.  Counts Nine through Thirteen each had a sexually violent predator specification, and Count Thirteen also had a sexual motivation specification.  ECF Doc. 7-1 at 4-9.

Patterson filed two pretrial motions relevant to this petition.  First, he moved to sever Counts One through Eight involving alleged conduct in 1995 and 1997 from Counts Nine through Thirteen involving alleged conduct in 2009.  ECF Doc. 7-1 at 11-23.  The state opposed severance.  ECF Doc. 7-1 at 24-35.  The trial court denied Patterson's motion in a journal entry dated December 28, 2015.  ECF Doc. 7-1 at 36.

---

[2]  https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A681441 (Last visited 11/4/19).

Patterson also moved to dismiss Counts One through Three for preindictment delay.  He argued that the nineteen-year delay in prosecuting him for his alleged 1995 conduct prejudiced his ability to defend himself.  Patterson also specifically argued that the victim T.T.'s mother, who had died sometime after 1995, would have provided exculpatory testimony.  ECF Doc. 7-1 at 41-62.  The state opposed the motion (ECF Doc. 7-1 at 63-75), and the trial court denied the motion.  ECF Doc. 7-1 at 76.

The jury found Patterson guilty of rape and kidnapping against T.T. (Counts 1 and 3), and guilty of two counts of rape against M.J. based on her "substantial impairment". (Counts 9 and 11).  ECF Doc. 7-1 at 88.  The jury found Patterson not guilty of felonious sexual penetration (Count Two), not guilty of five counts of rape (Counts Four, Five, Six, Ten and Twelve), and not guilty of all of the specifications attached to those counts.  *Id.*  Patterson waived his right to a jury trial on the sexually violent predator specifications attached to Counts 9 and 11, and the court found him guilty of the specifications.  ECF Doc. 7-1 at 85, 103.

On February 24, 2016, the trial court sentenced Patterson to serve consecutive 10 year prison terms on the rape and kidnapping convictions involving T.T. (Count One and Count Three), and indefinite prison terms of 15 years to life for each of the rape convictions involving M.J. (Count Nine and Count Eleven), to be served concurrently to each other, but consecutively to the other sentences.  The aggregate sentence was 35 years to life.  The court also adjudicated Patterson a sexual predator and a Tier III sex offender.  ECF Doc. 7-1 at 103.

### B.    Direct Appeal

On March 21, 2016, Patterson, represented by new counsel, filed an appeal in the Ohio Court of Appeals.  ECF Doc. 7-1 at 105.  Patterson's brief asserted four assignments of error:

First Assignment of Error:  The trial court erred when it denied Patterson's pretrial motions to dismiss Counts 1, 2 and 3 for reasons of preindictment delay. ECF Doc. 7-1 at 119.

Second Assignment of Error:  The trial court erred when it denied Patterson's pretrial motion to sever the 1995 and 1997 allegations from those arising in 2009. ECF Doc. 7-1 at 119.

Third Assignment of Error:  The evidence is insufficient to support convictions of rape in Counts 9 and 11.  ECF Doc. 7-1 at 119.

Fourth Assignment of Error IV:  The trial court erred when it failed to merge Patterson's rape and kidnapping convictions in Counts 1 and 3.  ECF Doc. 7-1 at 119.

The state filed a brief.  ECF Doc. 7-1 at 164.  On April 20, 2017, the Ohio Court of Appeals affirmed the judgment of the trial court.  ECF Doc. 7-1 at 220, *State v. Patterson,* 8th Dist. Cuyahoga No. 104266, 2017-Ohio-1444.

On June 6, 2017, Patterson, represented by counsel, filed a notice of appeal with the Ohio Supreme Court and a motion for a delayed appeal.  ECF Doc. 7-1 at 237, ECF Doc. 7-1 at 239. The Ohio Supreme Court granted leave to appeal.  ECF Doc. 7-1 at 245. Patterson's memorandum in support of jurisdiction asserted two propositions of law:

PROPOSITION OF LAW I:  In determining whether a defendant has established actual prejudice for purposes of demonstrating prejudicial pre-indictment delay, a court must analyze how the defendant would have utilized the missing evidence at trial.

PROPOSITION OF LAW II:  To support a conviction of rape under R.C. 2907.02(A)(1)(c), the state must prove the distinct elements of substantial impairment and the defendant's knowledge or reasonable cause to believe that the other person was substantially impaired.

ECF Doc. 7-1 at 247.  On January 31, 2018, the Ohio Supreme Court declined to accept jurisdiction.  ECF Doc. 7-1 at 301.  Patterson did not appeal to the U.S.  Supreme Court.

4

III.    **Federal Habeas Corpus Petition**

On April 11, 2018, Patterson placed his *pro se* petition for writ of habeas corpus pursuant

to 28 U.S.C. § 2254 in the prison mailing system.  ECF Doc. 1 at 16.  Patterson asserts four

grounds for relief.

> **GROUND ONE:**  The trial court erred when it denied Patterson's pretrial motion to dismiss counts 1, 2, and 3 for reasons of preindictment delay.
>
> **Supporting facts:**  Both the Due Process Clause of the Fifth Amendment to the U.S. Constitution and Ohio Constitution, Article I, Section 16, afford protection against pre-indictment delay.  ECF Doc. 1 at 5.
>
> **GROUND TWO:**  The trial court erred when it denied Patterson's pretrial motion to sever the 1995 and 1997 allegations from those arising in 2009.
>
> **Supporting facts:**  Petitioner submits that he was prejudiced by the trial court's decision denying his motion to sever the 1995 and 1997 allegations from those arising in 2009.  ECF Doc. 1 at 7.
>
> **GROUND THREE:**  The evidence is insufficient to support convictions of rape in Counts 9 and 11.
>
> **Supporting facts:**  The alleged victim in this case testified that they [sic] had no memory of having had intercourse on the night in question, let alone the Petitioner.  ECF Doc. 1 at 9.
>
> **GROUND FOUR:**  The trial court erred when it failed to merge Patterson's rape and kidnapping convictions in Counts 1 and 3.
>
> **Supporting facts:**  The Petitioner contends that the trial court erred when it failed to merge his rape and kidnapping convictions in Counts 1 and 3.  ECF Doc. 1 at 11.

IV.    **Law and Analysis**

A.    **Factual Background**

We begin with a recitation of the factual findings of the Ohio courts.  The Ohio Court of

Appeals summarized the facts as follows:

> {¶ 3}  On December 28, 1995, a 16-year-old girl named T.T. was selling roses and CDs at the M & M Lounge in Cleveland.  As T.T. was leaving

5

work, a man that she recognized from the lounge offered her a ride.  She only knew him by his nickname, "Apples."  Apples drove T.T. to her friend's house, and T.T. stated that when they arrived in the driveway, Apples raped her by force.  After the attack, T.T. ran inside the house and told her friend, L.H., what happened. T.T. also told her mother, who took T.T. to the hospital, where a rape kit was collected.  In court, T.T. identified Patterson as Apples.

{¶ 4}  L.H. testified that when T.T. arrived at her home on that day, L.H. saw T.T. in a vehicle with a man who introduced himself as Apples.  After the introduction, L.H. went back into her home.  A short time later, T.T. came into the house and told L.H. that Apples raped her.  In court, L.H. identified Patterson as Apples.

{¶ 5}  Once T.T. was taken to the hospital, the staff performed a rape kit and examination.  T.T. told the hospital staff that she had been raped by a man she did not know, other than his nickname.  Detective Laura Parker ("Detective Parker") was assigned to T.T.'s case.  Detective Parker testified that she could not locate Apples because T.T. did not know his real name.  Detective Parker also testified that she was not aware there was a rape kit because it had not been collected from the hospital.  So Detective Parker closed the case.  Once the rape kit was discovered in 2013, DNA testing was conducted and the DNA matched the DNA of Patterson.

{¶ 6}  On the evening of February 7, 2009, M.J. testified that she and three other people were at M.J.'s aunt's home, where they consumed a large amount of alcohol, after which the group went to Whitmore's bar and consumed more alcoholic drinks.  M.J. estimated that she had two or three drinks at the bar.  She testified that she was very intoxicated when she decided to walk back to her aunt's home alone.  She remembered getting into a car with a man she did not know.  The next thing she remembered was waking up in an abandoned home.  M.J. walked home and testified that she felt different in her vaginal area so she decided to go to the hospital where she consented to a sexual assault examination.

{¶ 7}  At the hospital, M.J. told the emergency room nurse that she had been sexually assaulted.  The nurse testified that she performed a sexual assault examination and collected samples from M.J. and personally sealed the rape kit.  M.J.'s rape kit was tested by a forensic scientist in 2014.  The DNA from the rape kit matched Patterson's DNA.

{¶ 8}  On April 22, 2015, Patterson was indicted on 13 counts for raping and kidnapping three women, T.T. (1995), M.J. (2009), and A.G. (1997), for which he was found not guilty.  Patterson was found guilty of the rape

> and kidnapping of T.T. and the rape based on "substantial impairment" of M.J.
>
> {¶ 9}  However, before Patterson's trial commenced, he filed two pretrial motions.  He filed a motion to sever the 1995 and 1997 counts from the 2009 counts relating to M.J.  He argued that joinder of those counts were prejudicial and would deny him his due process right to a fair trial.  He also filed a motion to dismiss for preindictment delay regarding the rape of T.T. in 1995.  He argued that he was prejudiced by the unavailability of T.T.'s mother, who died before trial.  Patterson argued that T.T.'s mother could have provided exculpatory testimony had the state brought charges against him in a timely manner.  T.T.'s mother called the police after her daughter was attacked and told the police that she believed T.T. was lying about not knowing Patterson and lying about the attack itself.  The trial court denied both motions.

*State v. Patterson,* 8th Dist. Cuyahoga No. 104266, 2017-Ohio-1444.  These state court factual findings are presumed correct unless Patterson rebuts them by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Moore v. Mitchell,* 708 F.3d 760 (6th Cir. 2013).

### B.    Procedural Default/Exhaustion

Warden Clipper argues that Patterson's Ground Two and Four claims are procedurally defaulted because he failed to raise them in his appeal to the Ohio Supreme Court.  *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999).  Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review the same claim in a petition for a writ of habeas corpus on the merits.  28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy,* 455 U.S. 509 (1982).  This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan,* 526 U.S. at 845.  In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  The exhaustion requirement, however, "refers only to remedies still available at the

time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982).  It "does not require pursuit of a state remedy [when] such a pursuit is clearly futile."  *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

A petitioner may procedurally default a claim by failing to "fairly present" the claim in state court and pursue that claim through the state's "ordinary appellate review procedures," if, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim. *Williams v. Anderson,* 460 F.3d 789, 816 (6th Cir. 2006) (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition.").  Under these circumstances, although the exhaustion requirement is technically satisfied because a petitioner no longer has any state-court remedies available, the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims, barring federal habeas review.  *Williams*, 460 F.3d at 806 ("[When] state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review."); *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . ., it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ." (internal citations omitted)).

Furthermore, to "fairly present" a claim to a state court, a petitioner must assert both its legal and factual basis.  *Williams*, 460 F.3d at 806 (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)).  Most importantly, a "'petitioner must present his claim to the state courts

as a federal constitutional issue – not merely as an issue arising under state law.'" *Id.* (quoting

*Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).[3]

      A preliminary finding that a claim has been procedurally defaulted does not end the

court's analysis of the issue.  In *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), the Sixth Circuit

outlined the now-familiar evaluation district courts must make when the state argues that a

habeas claim is defaulted because of a prisoner's failure to observe a state procedural rule:

> First, the federal court must determine whether there is a state procedural rule that
> is applicable to the petitioner's claim and whether the petitioner failed to comply
> with that rule.  Second, the federal court must determine whether the state courts
> actually enforced the state procedural sanction -- that is, whether the state courts
> actually based their decisions on the procedural rule.  Third, the federal court
> must decide whether the state procedural rule is an adequate and independent state
> ground on which the state can rely to foreclose federal review of a federal
> constitutional claim. Fourth, if the federal court answers the first three questions
> in the affirmative, it would not review the petitioner's procedurally defaulted
> claim unless the petitioner can show cause for not following the procedural rule
> and that failure to review the claim would result in prejudice or a miscarriage of
> justice.

*Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001) (citing *Maupin*, 785 F.2d at 138) (further

citations omitted).

      Here, Patterson obtained leave from the Ohio Supreme Court to file a delayed appeal.

ECF Doc. 7-1 at 245.  However, when he filed his memorandum in support of jurisdiction, he

only raised two arguments – those he now asserts in Grounds One and Three of his petition.  He

did not argue to the Ohio Supreme Court that the trial court erred in denying his motion to sever

---

[3] Federal habeas courts review a petitioner's state-court briefs to determine whether he or she fairly presented a
claim as a federal constitutional claim, examining the petitioner's:

> "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases
> employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or
> in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging
> facts well within the mainstream of constitutional law."

*Williams*, 460 F.3d at 806 (citing *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)).

or in failing to merge Counts One and Three for sentencing.  Patterson raised these arguments in his appeal to the Ohio Court of Appeals but appears to have abandoned them when he sought review by the State Supreme Court.  He was required to exhaust these claims before the highest state court before he could become eligible to raise them in his habeas petition.  Because he did not, his Ground Two and Four claims should be were procedurally defaulted unless he can show cause and prejudice to excuse his failure to exhaust them in state court.

### 1.    Cause for Procedural Default

As in his memorandum in support of jurisdiction to the Ohio Supreme Court, Patterson's traverse appears to abandon his Ground Two and Ground Four claims.  Patterson doesn't argue that he had any cause for failing to raise these arguments in the Ohio Supreme Court; indeed, his traverse doesn't mention these claims at all.  Nor does his petition state any reason for failing to exhaust his state court remedies for his Ground Two and Ground Four claims.  ECF Doc. 1 at 7, 11.  Patterson's traverse simply omits Ground Two and renumbers his Ground Three claim – now identifying *it* as Ground Two.  ECF Doc. 8 at 14, 26.  In short, Patterson hasn't offered any cause to excuse his failure to raise his Ground Two and Ground Four claims in the Ohio Supreme Court.  Likewise, Patterson has not argued he would suffer any prejudice from this court's failure to grant relief on those claims.

### 2.    Actual Innocence

A federal court may review a procedurally defaulted claim, even in the absence of a demonstration of cause and prejudice, to correct "a fundamental miscarriage of justice," as when the petitioner is actually innocent.  *Coleman v. Thompson,* 501 U.S. 722, 748, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991) (quoting *Engle v. Isaac*, 456 U.S. 107, 135, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982)).  It is well-established that "'[a]ctual innocence' means factual innocence, not

mere legal insufficiency." *Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir. 2006) (citing *Bousley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998)).  For a petitioner to establish "actual innocence," that petitioner must present new evidence to the habeas court. *Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 427 (6th Cir. Ohio 2003).  This "new evidence [will] not rise to the standard of establishing his actual innocence [if] a reasonable juror still could have found [petitioner] guilty [beyond a reasonable doubt] even after considering [the] new evidence." *Jells v. Mitchell,* 538 F.3d 478, 507 (6th Cir. 2008).  New evidence cannot excuse procedural default except when that evidence is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Sellers v. Ward,* 135 F.3d 1333, 1338 (10th Cir. 1998) (citing *Schlup v. Delo*, 513 U.S. 298, 324, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)).  New evidence, consequently, can only excuse procedural default in "extraordinary" cases. *Carter,* 443 F.3d at 538.

Here, Patterson has not argued that he is innocent.  Nor has he presented any new evidence to establish his actual innocence.  Because Patterson procedurally defaulted his Ground Two and Ground Four claims, and has neither demonstrated cause and prejudice to excuse the default nor argued his actual innocence, I recommend that Patterson's Ground Two and Four claims be dismissed.

## C.    Merits Review

### 1.    AEDPA Standard

A state habeas prisoner's claims for habeas corpus relief are governed by the Antiterrorism and Effective Death Penalty Act, *Pub. L. 104-132, 110 Stat. 1214* ("AEDPA"), which amended the habeas corpus statute by including a standard of review that gives significant deference to the

decisions made by the state courts on the federal constitutional issues raised in a habeas corpus petition.  *See Penry v. Johnson*, 532 U.S. 782, 791, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir.2008).  AEDPA imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279, (2002) (per curiam).

When the claim presented in a habeas corpus petition ***has*** been presented to and decided on the merits by the state courts, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts in light of the evidence that was presented.  28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In applying this statute, the Supreme Court has held that" [t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one."  To obtain habeas corpus relief, a petitioner must show the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded

disagreement." *Bobby v. Dixon*, 565 U.S. 23, 24, 132 S. Ct. 26, 181 L. Ed. 2d 328 (2011), quoting *Harrington v. Richter*, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. at 102-103 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 50, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment)). In short,"[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.*, quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007).

### 2. Ground One

Patterson's Ground One claim asserts that the trial court erred in denying his pretrial motion to dismiss Counts 1, 2 and 3 for preindictment delay. ECF Doc. 1 at 5. The *Sixth Amendment* to the United States Constitution guarantees the accused in a criminal prosecution "the right to a speedy and public trial." But on its face, the *Sixth Amendment* provides no protection to those who have not yet been accused; it does not "require the Government to discover, investigate, and accuse any person within any particular period of time." *United States v. Marion*, 404 U.S. 307, 313, 92 S. Ct. 455, 30 L.Ed.2d 468 (1971). Statutes of limitations provide the ultimate time limit within which the government must prosecute a defendant - a definite point "beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced." *Id.* at 322. *See also United States v. Lovasco*, 431 U.S. 783, 789,

97 S. Ct. 2044, 52 L.Ed.2d 752 (1977) (stating that statutes of limitations provide predictable limits to prevent initiation of overly stale charges).  But when unjustifiable preindictment delay causes actual prejudice to a defendant's right to a fair trial despite the state's initiation of prosecution within the statutorily defined limitations period, the Due Process Clause affords the defendant additional protection.  *Id.*

Patterson argues that the Ohio Court of Appeals misapplied Ohio law in determining that he was not prejudiced by the preindictment delay.  He cites *State v. Luck,* 15 Ohio St.3d 150 (1984) in which the Ohio Supreme Court held that the preindictment death of a witness can constitute prejudice "if the defendant can identify exculpatory evidence that was lost and show that the exculpatory evidence could not be obtained by other means."  In *Luck,* the Ohio Supreme Court balanced the prejudicial factors of the delay against the evidence at the time of the indictment to determine whether Luck would suffer actual prejudice were she required to stand trial, and it held that she would.  *Id.* at 157-158.  The Ohio Supreme Court reasoned , "[i]t [could not] be said that the missing evidence or the dead witnesses would not have minimized or eliminated the impact of the state's circumstantial evidence" connecting Luck to the murder.  *Id.* at 157.

Patterson also relies on *State v. Jones,* 148 Ohio St.3d 167, 2016-Ohio-5105, decided after he was convicted but before the Ohio Court of Appeals affirmed the trial court's judgment. In *Jones*, the Ohio Supreme Court, relying on *Luck,* held that "a defendant need not know what the exact substance of an unavailable witness's testimony would have been in order to establish actual prejudice based on the witness's unavailability.  Actual prejudice exists when missing evidence or unavailable testimony, identified by the defendant and relevant to the defense, would

14

minimize or eliminate the impact of the state's evidence and bolster the defense." *Id.* at 174, citing *Luck*, 15 Ohio St.3d at 157-158.

However, the Ohio Supreme Court also recognized in *Jones* that the death of a witness will not *always* constitute actual prejudice. *Id.* at 174.  In *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, the Ohio Supreme Court considered unavailable evidence in light of the other evidence available at the time of the indictment and in light of its relevance to the defense. Because Adams had not explained what evidence the deceased witness "might have offered," and because the deceased witness had actually implicated Adams in the murder before he died, the Ohio Supreme Court reasoned that "[i]f anything, [the witness's] absence at trial was a benefit to Adams's defense." *Id.*  The Court found that Adams was not prejudiced by the preindictment delay.

Patterson contends that the preindictment delay and unavailability (due to death) of T.T.'s mother caused him actual prejudice.  He argues that T.T.'s mother was involved in every step of reporting T.T.'s alleged rape.  He thinks that the case was closed because T.T.'s mother called the police and reported that T.T. both knew the offender and had lied about the rape.  He argues that his case is most like *Luck*, in which the Ohio Supreme Court reversed Luck's conviction because "[i]t [could not] be said that the missing evidence or the dead witnesses would not have minimized or eliminated the impact of the state's circumstantial evidence."

The Ohio Court of Appeals, citing both *Jones* and *Adams*, held:

{¶13}  Patterson has failed to establish that he was prejudiced by the delay.  "In determining actual prejudice, '[a] court must consider the evidence as it exists when the indictment is filed and the prejudice the defendant will suffer at trial due to the delay.'" [*Adams*] at ¶ 10, quoting *Jones* at ¶ 20, quoting *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 52.  Patterson reasons that because the state delayed in bringing charges against him, a crucial witness to his case died.  He claims that T.T.'s mother's testimony could have helped to show that he did not rape T.T.  However, he cannot speculate about the extent and

effect of her testimony.  There is no way of knowing what information would come from T.T.'s mother's testimony or even that it would be exculpatory.  T.T.'s mom told the detective that her daughter knew Patterson.  T.T. never said that she did not know Patterson; she stated that she was familiar with her rapist as Apples.  T.T. did not know the true identity of Patterson, and DNA analysis was not done because the detective was not aware that a rape kit was completed.  Therefore, the state was unable to charge Patterson with the rape of T.T. until the DNA from T.T.'s rape kit was located and tested.  "A claim of actual prejudice should be scrutinized 'vis-à-vis the particular evidence that was lost or unavailable as a result of the delay' and 'the relevance of the lost evidence and its purported effect on the defense.'"  *Id.,* quoting *Jones* at ¶ 23.

{¶14}  Patterson's argument that T.T.'s mother could have testified on his behalf is speculative and does not show actual prejudice.  "Actual prejudice is not demonstrated by the 'possibility' of faded memories, inaccessible witnesses, and lost evidence, which are inherent in any extended delay and are sufficiently protected against by the statute of limitations."  *Id.* at ¶ 11, citing *Jones* at ¶ 21.  "[A] defendant cannot rely upon broad assertions of missing evidence or an unavailable witness to establish prejudice.  A defendant must demonstrate a viable, tangible connection between the missing evidence or the unavailable witness to the defense of the case."  *Id.* at ¶ 13.  Patterson does not demonstrate a viable, tangible connection between what T.T.'s mother could testify to and his defense.  We find that the trial court did not err in denying Patterson's motion to dismiss for preindictment delay.

*State v. Patterson,* 8th Dist. Cuyahoga No. 104266, 2017-Ohio-1444.

I conclude that fair minded jurists could disagree as to whether the Ohio Court of Appeals properly applied Ohio case law to the facts of Patterson's case.  The Ohio Court of Appeals correctly found that Patterson's argument that T.T.'s mother would have testified on his behalf was speculative.  Patterson based his argument on a note in a police report stating that T.T.'s mother called and said that T.T. was lying about the rape.  ECF Doc. 7-11 at 145-146.  However, the trial court ruled that the police report note was hearsay and was not admissible.  *Id.*  And, there could have been a number of explanations as to why T.T.'s mother called the police or whether she sought to end the investigation.  For example, she and T.T. may have decided that they did not want to continue participating in the investigation.  Without more information about

16

this police report note, it was speculative for Patterson to assume that T.T.'s mother would have testified on his behalf.

On the other hand, the police report seemingly indicated that T.T.'s mother said that T.T. was lying about the assault.  In *State v. Jones,* 148 Ohio St.3d 167, the Ohio Supreme Court held that "a defendant need not know what the exact substance of an unavailable witness's testimony would have been in order to establish actual prejudice based on the witness's unavailability."  A fair minded jurist might have found that the testimony of T.T.'s mother, like that of the unavailable witness in *Jones*, could have minimized or eliminated the impact of the state's evidence and bolstered the defense.  But, even we were to definitively conclude that "fair minded jurists would disagree,"[4] habeas relief is not available, because it cannot be said that the state court's denial of Patterson's motion to dismiss for preindictment delay was *unreasonable.*  It was reasonable for the Ohio Court of Appeals to find that Patterson was not actually prejudiced by the preindictment delay.

Patterson also contends that the state did not provide a justifiable reason for delay.  ECF Doc. 8 at 24.  This argument does not seem to be supported by the record.  The Ohio Court of Appeals recognized that Patterson's identity as a suspect was not known until the DNA analysis on previously-collected sexual assault kits was done.  The DNA analysis on T.T.'s forensic evidence was not done in close proximity to the rape because the detective was not aware that a rape kit was completed.  ECF Doc. 7-1 at 227.  Patterson makes a passing reference to the U.S. Supreme Court case, *United States v. Lovasco,* 431 U.S. 783 (1977), because it was cited by *Luck,* 15 Ohio St.3d 150.  However, *Lovasco* emphasized that the appellant was required to show actual prejudice caused by the delay, which would then be compared to the reason for the

---

[4] *Harrington,* 562 U.S. at 88, citing *Yarborough,* 541 U.S. at 664

Government's delay.  *Lovasco,* 431 U.S. 783, 790.  And, *Lovasco* reversed the court of appeal's decision that the government had not shown good reason for the delay.  *Id* at 796.  Patterson fails to show that there was not a justifiable reason for the delay of his indictment and *Lovasco* does not support his claim.

Patterson mainly argues that the Ohio Court of Appeals misapplied Ohio Supreme Court precedent, such as *Luck, Jones,* and *Adams* rather than clearly established federal law as determined by the Supreme Court of the United States.  We could dispose of Patterson's Ground One claim on the basis that habeas corpus relief is not available for the alleged misapplication of state law principles.  Liberally construed, however, Patterson's arguments can be said to challenge the Ohio court's application of clearly established federal law, because the Ohio cases cited by the Ohio Court of Appeals require the same showing in order to prove prejudicial preindictment delay that has been required in U.S. Supreme Court cases, such as *Lovasco*.

Patterson has not fully developed an argument that the Ohio Court of Appeals misapplied clearly established U.S. Supreme Court precedent governing disposition of preindictment delay claims.  Even if this court would construct such an argument for Patterson, it would not prevail.  It is quite clear that the Ohio Court of Appeals, in concluding that Patterson had not shown actual prejudice resulting from the alleged preindictment delay and in concluding that there were reasonable grounds for that delay, has evaluated and applied the same principles that the U.S. Supreme Court has articulated in its preindictment delay jurisprudence.  *See Lovasco,* 431 U.S. 783, 790.  And I cannot conclude that the Ohio Court of Appeals' conclusion on that issue was either wrong or unreasonable.  Further, to the extent the Ohio Court of Appeals made factual findings to support its conclusion regarding Patterson's Ground One claim, a federal court deciding a habeas petition must defer to such findings unless the petitioner rebuts them by clear and

18

convincing evidence.  28 U.S.C. § 2254(e)(1); *Moore,* 708 F.3d at 760.  Patterson has failed to do so.  Because I cannot find that the state court decision was contrary to or an unreasonable application of Supreme Court precedent, I recommend that it be dismissed for lack of merit.

### 3.    Ground Two

As noted above, Patterson's Ground Two claim was procedurally defaulted and his traverse appears to abandon this claim.  However, in order to be of greatest assistance to the Court, I will proceed to consider the merits of Patterson's Ground Two arguments.  Federal courts considering habeas petitions are permitted to address the merits before reaching a final conclusion on procedural default.  *Hudson v. Jones,* 351 F.3d 212, 215 (6th Cir. 2003); *Bates v. Bell,* 788 F.3d 568, 573 (6th Cir. 2015).

Patterson's Ground Two claim asserts that the trial court erred in failing to sever the 1995 and 1997 case from the 2009 sexual assault case.  In *United States v. Lane,* 474 U.S. 438, 449, the Supreme Court held that an error involving misjoinder required reversal only if it resulted in actual prejudice because "it had substantial and injurious effect or influence in determining the jury's verdict."  *Citing Kotteakos v. United States,* 328 U.S. 750, 776 (1946).  In *Davis v. Coyle,* 475 F.3d 761 (2007), the Sixth Circuit, citing *Lane*, 474 U.S. at 446 n.8, held that "in order to obtain federal habeas relief [a petitioner] must show that misjoinder of the counts 'result[ed] in prejudice so great as to deny a defendant his . . . right to a fair trial.'"

> Without question, a risk of undue prejudice exists whenever joinder of counts permits introduction of evidence of other crimes that would otherwise be inadmissible.  *See, e.g., Bean v. Calderon,* 163 F.3d 1073, 1084 (9th Cir. 1998).  By allowing joinder of offenses, the possibility exists that a jury may use the evidence of one of the charged crimes to infer a general criminal disposition by the defendant; the jury also may confuse or cumulate the evidence of the various crimes charges.  *See Lucero v. Kerby*, 133 F.3d 1299, 1314 (10th Cir. 1998).  The prejudice that [a petitioner] must demonstrate, however, in order to justify a grant of a writ of habeas corpus is actual prejudice, not merely the potential for prejudice.  *See Herring v. Meachum*, 11 F.3d 374, 377-78 (2d Cir. 1993).

In concluding that Patterson had not shown prejudice, the Ohio Court of Appeals reasoned:

> Patterson argues that he was prejudiced by the state trying all three cases together. However, he does not demonstrate in what way he was prejudiced. Patterson's argument is without merit because the jury found him not guilty of the alleged offense[s] that took place in 1997. This demonstrates that the evidence presented to the jury was simple and direct. Additionally, the evidence of the joined offenses were uncomplicated, such that the jury was able to segregate the proof required to prove each offense resulting in the defendant not being prejudiced by the joinder.

I cannot say that the state court of appeals' decision was an unreasonable application of Supreme Court precedent. The Ohio Court of Appeals applied state law in determining that Patterson was not prejudiced, and its reasoning does not violate any Supreme Court precedent. *See Lane,* 474 U.S. at 449. Patterson was required to show that he was actually prejudiced by the joinder of the three charges. The fact that the jury found him not guilty of one group of the charges and even one of the charges involving T.T. shows that they were able to separately consider each of the three incidents and related charges. Patterson does not argue otherwise and appears to abandon this claim. Should the Court elect to decide Patterson's Ground Two claim on the merits, I recommend that it be dismissed for lack of merit.

### 4. Ground Three

Patterson's Ground Three claim asserts that there was insufficient evidence to support his convictions for rape in Counts 9 and 11 of the indictment. ECF Doc. 1 at 9. Warden Clipper argues that this claim lacks merit. Federal habeas review is available for insufficient evidence arguments. *Jackson,* 443 U.S. at 316; *In re Winship,* 397 U.S. 358 (1970); *Johnson v. Coyle,* 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(*en banc*). States have the power to determine the elements of criminal offenses, *See Engle v. Isaac,* 456

U.S. 107, 119-120 (1982); *Jackson,* 443 U.S. at 324, but the Due Process Clause prohibits states

from convicting someone "without proving the elements of that crime beyond a reasonable

doubt." *Fiore v. White,* 531 U.S. 225, 228-229 (2001).

A habeas court must determine "whether, after viewing the evidence in the light most

favorable to the prosecution, *any* rational trier of fact could have found the essential elements of

the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319. (Emphasis in original). "[T]he

*Jackson* inquiry does not focus on whether the trier of fact made the correct guilt or innocence

decision, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins,*

506 U.S. 390, 402 (1993).

Because both *Jackson* and AEDPA apply to Patterson's evidence sufficiency claim,

federal habeas review requires deference at two levels. "First, deference should be given to the

trier of fact's verdict, as contemplated by *Jackson;* second, deference should be given to the

[state court's] consideration of the trier-of-fact's verdict, as dictated by [the] AEDPA." *Davis v.*

*Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(quoting *Tucker v. Palmer,* 541 F.3d 652, 656 (6th Cir.

2008)). The Sixth Circuit has explained:

> When reviewing whether the state court's determination was "objectively
> unreasonable," this court necessarily engages in a two-step analysis. First, we
> must ask whether the evidence itself was sufficient to convict under *Jackson*. The
> inquiry ends if the panel determines that there was sufficient evidence to convict
> [the petitioner]. If we find that the evidence is insufficient to convict, we must
> then apply AEDPA deference and ask whether the state court was "objectively
> unreasonable" in concluding that a rational trier of fact could find [the petitioner]
> guilty beyond a reasonable doubt.

*Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir. 2010). The Sixth Circuit has observed that

"'[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a

nearly insurmountable hurdle.'" *Davis,* 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d

703, 710 (7th Cir. 2009)).

Patterson argues that there was insufficient evidence to find him guilty of rape as charged in Counts 9 and 11 of the indictment.  ECF Doc. 8 at 26-35.  The last explained state court decision that considered Patterson's evidence insufficiency argument rejected it, holding:

> {¶ 21}  Patterson was convicted of two counts of rape in violation of R.C. 2907.02(A)(1)(c).  Count 9 was for the vaginal rape of M.J. while she was substantially impaired by alcohol.  Count 11 was for the anal rape of M.J. while she was substantially impaired by alcohol. The statute reads as follows:
>
>> (1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
>>
>> (c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age.
>
> R.C. 2907.02(A)(1)(c).
>
> {¶ 22}  M.J. testified that she consumed a large amount of alcohol and described herself as very intoxicated.  "The consumption of a large amount of alcohol over the course of just a few hours is sufficient evidence to find that the victim was substantially impaired."  *State v. Kuck*, 2d Dist. Darke, 2016-Ohio-8512, ¶ 95, 79 N.E.3d 1164.  She remembered getting into the car with a male stranger and waking up in an abandoned home.  She testified that she felt as if she had sexual intercourse, but had no memory of the interaction.  "Evidence of substantial impairment can also come from a victim's inability to remember the events of the incident due to alcohol consumption."  *Id*. at ¶ 45.  She decided to go to the hospital where she consented to a collection of a sexual assault kit.  The nurse collected samples from M.J.'s vagina and her rectum.  The semen collected from M.J.'s body was matched to the DNA of Patterson.  M.J. testified that she did not consent to having sexual intercourse with Patterson.
>
> {¶ 23}  Given M.J.'s testimony and the physical evidence linked to Patterson, there was sufficient evidence to support his rape convictions.  "Ohio courts have consistently held that a victim's testimony, if believed, is sufficient to support a rape conviction. 'There is no requirement that a rape victim's testimony be corroborated as a condition precedent to conviction.'"  *State v. Williams*, 8th Dist. Cuyahoga No. 92714, 2010-Ohio-70, ¶ 32.  Therefore, Patterson's third assignment of error is overruled.

*State v. Patterson,* 8th Dist. Cuyahoga No. 104266, 2017-Ohio-1444.

22

As recognized by the Ohio Court of Appeals, there was sufficient evidence to convict Patterson of raping M.J.  There was DNA evidence proving that Patterson had sex with M.J. vaginally and anally; testimonial evidence that M.J. was drunk and unable to consent to having sex with Patterson; and M.J. further testified that she did not consent to have sex with Patterson. ECF Doc. 7-11 at 72, 87-88.  Patterson contends that, because M.J. did not remember what happened after she got into his car, there was no evidence that she did not consent and/or that Patterson knew she was substantially impaired.  M.J. testified that she and her friends had been drinking all evening.  She testified that she was drunk when she left the bar; she remembered getting into a stranger's car, but did not remember anything after getting into the car.  She testified that she would not have been able to carry on a conversation and would have likely fallen asleep.  The next morning, she woke up alone in an abandoned home and felt different "down there."  ECF Doc. 7-11 at 74-75, 81, 111.  Thereafter, physical evidence was collected by Marymount hospital where M.J. worked at the time.  ECF Doc. 7-11 at 80-82.  The DNA evidence collected from M.J.'s body was matched to Patterson's DNA.  Patterson cites no evidence in the record to support the conclusion that he did *not* know that M.J. was substantially impaired.  In short, there was sufficient evidence from which a rational trier of fact could find that M.J. was substantially impaired and that Patterson knew it.  The evidence was sufficient to convict Patterson of the charges in Counts 9 and 11 of the indictment.

Patterson again cites Ohio case law in support of his argument that he did not know that M.J. was substantially impaired.  ECF Doc. 8 at 31-35.  However, he has not identified any misapplication by the Ohio courts of clearly established federal law from the U.S. Supreme Court.

The state trial court and court of appeals concluded that the evidence of rape on Counts 9 and 11 was strong enough to convict Patterson.  After reviewing the evidence, I too find that it was sufficient to convict him of those charges.  But even if I disagreed with the court of appeals' findings, I could not say that the Ohio Court of Appeals was "objectively unreasonable" in concluding that a rational trier of fact could have found Patterson guilty beyond a reasonable doubt.  There was sufficient evidence produced at trial to convict Patterson of rape as charged in Counts 9 and 11 of the indictment.  Because there is nothing to suggest that the state court decision was contrary to or an unreasonable application of Supreme Court precedent, I recommend that Patterson's Ground Three claim be dismissed for lack of merit.

5.    **Ground Four**

As with Ground Two, Patterson's Ground Four claim is procedurally defaulted and his traverse appears to abandon it.  I will briefly analyze another bar to Patterson's Ground Four claim in the event the Court would like to further consider this claim.

Patterson's Ground Four claim argues that the trial court erred when it failed to merge Patterson's rape and kidnapping convictions in Counts 1 and 3.  Normally, a challenge to state court sentencing decisions does not raise a cognizable federal constitutional claim that can be considered in a federal habeas case.  *See e.g. Sneed v. Donahue,* 993 F.2d 1939, 1244 (6th Cir. 1993).  A claim that only alleges violations of state law is not cognizable in a federal habeas case, and it must be dismissed on that basis unless the state court's state-law ruling violates a federal constitutional right.  *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a

24

conviction violated the Constitution, laws, or treaties of the United States."); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law.").

Warden Clipper speculates that Patterson might have been implicitly arguing that he was deprived of his rights under the Double Jeopardy Clause when the trial court sentenced him for both the rape and kidnapping of T.T.  The warden argues that no such deprivation occurred. ECF Doc. 7 at 25-26.  However, Patterson has never made a double jeopardy argument, either in his petition or in his traverse, so it is not necessary to further consider this speculative argument.

In his state court appeal, Patterson argued only that the state court's refusal to merge the counts violated Ohio Rev. Code. § 2941.25 because there was no proof to show he committed the crimes of kidnapping and rape against T.T. with separate animus.  The Ohio Court of Appeals, applying only Ohio law, held:

> {¶ 26}  When determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25,
>
>> [C]ourts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance — in other words, did each offense cause separate, identifiable harm? (2) [**16]  Were they committed separately? and (3) Were they committed with separate animus or motivation? "An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered." State v. Ruff, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31.
>
> *Boczek* at ¶ 6.
>
> {¶ 27}  First, we must determine that each offense of rape and kidnapping caused a separate, identifiable harm. Patterson committed rape against T.T. when he forcibly engaged in sexual intercourse with her.  "The kidnapping statute 'punishes certain removal or restraint done with a certain purpose and the eventual success or failure of the goal is irrelevant.'"  *State v. Price*, 8th Dist. Cuyahoga No. 99058, 2013-Ohio-3912, ¶ 28; *State v. Smith,* 9th Dist. Summit Nos. 23468 and 23464, 2007-Ohio-5524, ¶ 41, quoting *State v. Matthieu*, 3d Dist. Mercer Nos. 10-02-04 and 10-02-05, 2003-Ohio-3430, ¶ 17.

{¶ 28}  Patterson kidnapped T.T. when he deceptively offered to give her a ride to L.H.'s home. Patterson traveled from the M & M Lounge at E. 131 Street to L.H.'s home on E. 71 Street. Through Patterson's deception, he lead T.T. to believe that his only purpose was to drive her to L.H.'s home. Patterson then did not allow T.T. to leave his vehicle. T.T. testified that she was unable to exit the vehicle because Patterson choked her and restrained her. After arriving, Patterson then restrained her liberty to commit the rape. The restraining of her liberty to commit the actual rape was separate from Patterson's deception and restraint of T.T. from leaving the vehicle. These acts were separate and identifiable harm.

{¶ 29}  Second, Patterson was not charged with restraining T.T. while raping her. The two types of kidnapping are distinguishable.  Deception and restraining T.T. from leaving the vehicle is different from holding T.T. down to penetrate her. The kidnapping occurred before the rape. The rape and the kidnapping were committed separately.

{¶ 30}  Third, both acts were committed with a separate animus and motivation. Patterson deceived and restrained T.T. to prevent her from escaping. However, Patterson raped T.T. for his sexual gratification. Therefore, the rape and kidnapping were not allied offenses and should not merge. Patterson's fourth assignment of error is overruled.

*State v. Patterson,* 8th Dist. Cuyahoga No. 104266, 2017-Ohio-1444.

Patterson does not raise any arguments related to Ground Four in his traverse.  It appears that he concedes its procedural default.  Even if he had, it is apparent that Patterson's Ground Four claim raises only state law issues and it is not cognizable on federal habeas review. Further, because I cannot find that any state court decision concerning how the trial court sentenced Patterson was contrary to or an unreasonable application of clearly established federal law as announced in Supreme Court precedent, the Ground Four claim also lacks merit.  I recommend Patterson's Ground Four claim be dismissed as procedurally defaulted and noncognizable.  Should the Court prefer to reach the merits, the Ground Four claim should be dismissed for lack of merit.

**V.** **Recommendation Regarding Certificate of Appealability**

**A.** **Legal Standard**

As amended by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n. 4 (1983)); *accord Slack v. McDaniel*, 529 U.S. 473, 483-484 (2000).  The statute requires that certificates of appealability specify which issues are appealable.  28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks the requirement of § 2253(c)(3) that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by §

27

2253(c)(2)," Rule 11(a).  In light of the Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B.  Analysis

Patterson's Ground Two and Four claims were procedurally defaulted because he did not raise them in his appeal to the Ohio Supreme Court and he has not shown either cause or prejudice to excuse the default.  All of his habeas claims lack merit as explained above.  Patterson has not shown any unreasonable applications of federal law or any unreasonable determinations of facts.  Habeas relief is not available for the issues identified in his petition.  This would not be not debatable among jurists of reason, and I recommend that no certificate of appealability issue in this case.

## VI.  Recommendations

Because all of Patterson's claims lack merit or raise only noncognizable state-law issues and because his Ground Two and Ground Four claims were procedurally defaulted, I recommend that the Court DISMISS Patterson's claims and DENY his petition for writ of habeas corpus under 28 U.S.C. § 2254.  I further recommend that he not be granted a certificate of appealability.

Dated: November 5, 2019

Thomas M. Parker
United States Magistrate Judge

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file

objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).

29